IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILBUR-ELLIS COMPANY LLC, <br><br> Plaintiff, <br><br> v. <br><br> JOSH GOMPERT, AARON PETERSEN, JAMES KUNZMAN, and CHAD MUELLER, <br><br> Defendants. | **8:21CV340** <br><br><br> **MEMORANDUM AND ORDER** |

This matter is before the Court on defendants Josh Gompert ("Gompert"), Aaron Petersen ("Petersen"), James Kunzman ("Kunzman"), and Chad Mueller's ("Mueller" and collectively, "defendants") Motion to Dismiss (Filing No. 21). Mueller asks the Court to dismiss him from the case for lack of personal jurisdiction. Failing that, he joins the other defendants in moving to dismiss the Amended Complaint (Filing No. 11) for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(2), (6). Opposing dismissal on either ground (Filing No. 24), plaintiff Wilbur-Ellis Company LLC ("Wilbur-Ellis") moves (Filing No. 23) for oral argument. For the reasons stated below, Wilbur-Ellis's motion for oral argument is denied; the defendants' motion to dismiss is denied in part.

## I.    BACKGROUND

Wilbur-Ellis is a California company with its principal place of business in San Francisco. It serves its "farm customers" by marketing, distributing, and providing "agricultural chemicals, fertilizer, seed, and related agronomic products, services, and technologies" internationally. Wilbur-Ellis succeeds "[b]y leveraging its vast portfolio of branded technologies and biological solutions" and "its relationships and arrangements with suppliers, licensors, and other business partners" to serve its customers' needs. Wilbur-Ellis "goes to great lengths" to develop and maintain its trade secrets and confidential business information.

The defendants each worked for Wilbur-Ellis.  Gompert served as a Regional Sales Manager in Nebraska, Iowa, Kansas, and Missouri from October 1, 2014.  He was promoted to Strategic Account Advisor on August 1, 2021, which made him responsible for some of Wilbur-Ellis's most-important accounts.  Petersen began working for Wilbur-Ellis on January 31, 2017, as a Sales Representative.  About three years later, he became an Agronomist, focusing on research and product development.  He also worked with customers on site.

Kunzman joined Wilbur-Ellis as a Territory Seed Representative on July 20, 2020. He worked with customers and dealers.  Mueller began working for Wilbur-Ellis on June 28, 2021, as a Regional Seed Manager.  His position required him to interact with "customers, resellers, suppliers, licensors, and business partners" and understand Wilbur-Ellis's "rebate and dealer programs."  All four men had access to Wilbur-Ellis's "highly confidential proprietary information and trade secrets."[1]

On or about August 13, 2021, the defendants and eleven other Wilbur-Ellis employees resigned.  The defendants advised Wilbur-Ellis that they would start working for J.R. Simplot Company ("Simplot"), a competitor, when their resignations became effective.  On August 17, 2021, Wilbur-Ellis advised the defendants by letter that it was accepting their resignations effective at the close of business on August 27, 2021.  Wilbur-Ellis explained the defendants would remain employees and receive their pay through that date but "would be placed on inactive employment status effectively immediately." Wilbur-Ellis told the defendants to "cease all contact with or solicitation of" its customers and to return any Wilbur-Ellis property or equipment in their possession without using or accessing the equipment.  Wilbur-Ellis warned it intended "to conduct a full forensic audit of the electronic devices upon their return" to ensure the employees complied.

---

[1]Wilbur-Ellis has not alleged that any defendant signed any agreements relating to competition, solicitation, or protection of trade secrets, customer, or employees.

After the defendants began working for Simplot, Wilbur-Ellis began to suspect they had made a concerted effort to unfairly compete with Wilbur-Ellis and misappropriate its trade secrets and other confidential information before they left.  On September 1, 2021, Wilbur-Ellis filed suit (Filing No. 1).  In its amended complaint,  Wilbur-Ellis asserts four different causes of action against the defendants (1) breach of the duty of loyalty, (2) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.*, (3) violation of the Nebraska Trade Secrets Act ("NTSA"), Neb. Rev. Stat. § 87-501 *et seq.*, and (4) tortious interference with business relationships and expectancies.

The defendants now move to dismiss all claims against them.

## II.    DISCUSSION

### A.    Oral Argument

Wilbur-Ellis moves the Court pursuant to Nebraska Civil Rule 7(e) to permit one hour of oral argument on the defendants' pending motion to dismiss.  According to Wilbur-Ellis, "the number of claims at issue and the nature of the underlying allegations" require allowing the parties an additional opportunity "to clarify their positions and the relevant standards" and "better identify the extent to which factual disputes remain."  Wilbur-Ellis contends oral argument will avoid the risk of "an outcome where one or more claims is dismissed without prejudice, necessitating filing of a second amended complaint and raising the possibility of further motion practice."

The defendants oppose oral argument (Filing No. 28).  They predict Wilbur-Ellis "will use any oral argument to try and amend or supplement its implausibly pleaded claims, as it has tried (but failed) to do in its Opposition Brief."  The defendants contend that Wilbur-Ellis's "approach, on the whole, is improper."

Although the Court does not necessarily share the defendants' fear of oral argument run amok, it nonetheless finds the circumstances in this case are not so complex or

3

extraordinary as to require oral argument.   Accordingly, Wilbur-Ellis's motion for oral argument is denied.

### B.       Personal Jurisdiction

### 1.       Standard of Review

Mueller argues Wilbur-Ellis has failed to establish personal jurisdiction over him. "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003).   Wilbur-Ellis "must plead sufficient facts to support a reasonable inference that [Mueller] can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (internal marks omitted) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)).

In reviewing a Rule 12(b)(2) motion, the Court "may look beyond the pleadings to determine whether personal jurisdiction exists, including reviewing affidavits and other exhibits." *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).   "At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [the nonmoving party], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the moving party] is proper." *Creative Calling*, 799 F.3d at 979.

In a diversity case, the Court "may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state, and by the due process clause of the Fourteenth Amendment." *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).   Nebraska's long-arm statute, Neb. Rev. Stat. § 25-536, confers personal jurisdiction to the extent permitted by the U.S. Constitution, so the key question is whether requiring Mueller to defend Wilbur-Ellis's claims in Nebraska comports with due process. *See Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 693 (8th Cir. 2003).

"Due process requires that there be sufficient 'minimum contacts' between the nonresident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).  "The central question is whether a defendant has purposefully availed [him]self of the privilege of conducting activities in the forum state and should, therefore, reasonably anticipate being haled into court there."  *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003).

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299, or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (footnote omitted).

The "minimum contacts" needed to satisfy "due process may be the basis for either 'general' or 'specific' jurisdiction."  *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010); *accord Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State."  *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. ___, ___, 141 S. Ct. 1017, 1024 (2021) (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Daimler AG*, 571 U.S. at 137.

"Specific jurisdiction is different: It covers defendants less intimately connected with a State, but only as to a narrower class of claims."  *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1024.  The Court may exercise "specific jurisdiction" over a nonresident defendant if he "has certain contacts with the forum State and the cause of action arises out of those contacts."  *Creative Calling*, 799 F.3d at 980.

In analyzing the constitutional requirements for personal jurisdiction, the Court considers five "factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties." *Pecoraro*, 340 F.3d at 562. Although the first three factors are more important than the last two, the Court considers all of them "and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V Pharm.*, 648 F.3d at 592-93).

### 2.    Insufficient Contacts

Wilbur-Ellis claims it has adequately pleaded both "general" and "specific" jurisdiction over Mueller. Despite Mueller's unequivocal statement to the contrary, Wilbur-Ellis maintains Mueller is a Nebraska resident based on "his own prior statements to Wilbur-Ellis and other information received by Wilbur-Ellis." In support, Wilbur-Ellis points to Mueller's purported statements about his family's farm in Nebraska and his "desire to move back to Nebraska." Wilbur-Ellis reports one of its employees also heard Mueller moved to an acreage in Nebraska in August 2021. Wilbur-Ellis also notes Mueller attended a work meeting in Nebraska while employed by Wilbur-Ellis.

With respect to "specific" jurisdiction, Wilbur-Ellis contends Mueller is subject to personal jurisdiction in Nebraska based on his contacts as their employee and his alleged participation "in a concerted effort with the other Defendants, all of whom are Nebraska residents and worked for Wilbur-Ellis in Nebraska, to unfairly compete with Wilbur-Ellis on behalf of Simplot—actions that constitute the core of this lawsuit." Wilbur-Ellis alleges phone records indicate the defendants met at a hotel in Lincoln, Nebraska, to conspire to damage its business.

Mueller maintains he has been a citizen of Kansas since 2016. According to Mueller, he has not lived or worked in Nebraska during the relevant time and has never owned or leased any real property in the state. Noting that Wilbur-Ellis always paid him

in Kansas and withheld Kansas state taxes, Mueller states he only made one work-related trip to Nebraska at Wilbur-Ellis's request. With respect to the alleged meeting in Nebraska, Mueller states Wilbur-Ellis has no evidence that the "meeting ever took place, much less that Mueller attended it," but he does not explicitly deny it under oath. In Mueller's view, Wilbur-Ellis "is relying on a 'conspiracy theory' of personal jurisdiction,"—a theory that the Nebraska Supreme Court has rejected. *See Tracy v. Telemetrix Inc.*, No. 8:12CV359, 2014 WL 11462569, at *7 (D. Neb. Mar. 27, 2014) ("The Nebraska Supreme Court has held that the Nebraska long-arm statute does not allow the exercise of personal jurisdiction based on an allegation of conspiracy.") (citing *Ashby v. State*, 779 N.W.2d 343, 360-61 (Neb. 2010)).

Having applied the Eighth Circuit's five-factor test and considered the record evidence in the light most favorable to Wilbur-Ellis, the Court finds Wilbur-Ellis has not met its burden of establishing that Mueller has sufficient "minimum contacts" with Nebraska to subject him to personal jurisdiction in this Court. *World-Wide Volkswagen*, 444 U.S. at 291. To begin, Wilbur-Ellis has not shown Mueller's contacts with Nebraska render him "essentially at home" here. *Ford Motor Co.*, 592 U.S. at ___, 141 S. Ct. at 1024 (quoting *Goodyear*, 564 U.S. at 919.

A family farm in Nebraska and Mueller's future hopes about moving to Nebraska mean little to nothing. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting *Burger King*, 471 U.S. at 475)). To be sure, Wilbur-Ellis alleges "[u]pon information and belief, Mueller is a citizen and resident of Nebraska," but that assertion is contradicted by its own evidence and business records. At the motion stage, the Court views the evidence in the light most favorable to Wilbur-Ellis, but that does not require the Court to accept unfounded speculation as a fact establishing jurisdiction. *Cf. Viasystems, Inc. v. EBM-Papst St.*

7

*Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011) (explaining speculation and conclusory allegations about contacts with the forum state may not even warrant jurisdictional discovery).

Wilbur-Ellis's arguments regarding "specific" jurisdiction present a closer question given the nature of the underlying allegations. Still, the Court concludes Wilbur-Ellis has not shown on this record that Mueller "has purposefully availed [him]self of the privilege of conducting activities in [Nebraska] and should, therefore, reasonably anticipate being haled into court [here]." *Pecoraro*, 340 F.3d at 562.

But that does not end the matter. Wilbur-Ellis alternatively requests that "in the event the Court has doubts as to Mueller's contacts with Nebraska, the Court should stay [his] dismissal" to "allow the parties to engage in jurisdictional discovery." Though far from overwhelming at this point, Wilbur-Ellis's allegations of meetings in Nebraska combined with the other evidence in the record are sufficient to warrant limited jurisdictional discovery. *See*, *e.g.*, *Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (concluding the district court should not have dismissed the action against the defendant "without permitting him to take some jurisdictional discovery").

The Court will therefore reserve ruling on Mueller's motion to dismiss for lack of personal jurisdiction pending the completion of limited discovery and supplemental briefing on this issue.

### C.      Failure to State a Claim
#### 1.      Standard of Review

The defendants move to dismiss Wilbur-Ellis's claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff meets that standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

This "standard is not akin to a 'probability requirement'" at the pleading stage but does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556)).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In reviewing the sufficiency of a complaint under the plausibility standard, the Court accepts the well-pleaded facts as true and draws "all reasonable inferences in favor of the nonmoving party" but is "not bound to accept the truth of legal conclusions couched as factual allegations." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  But "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

### 2.    Allegations "Upon Information and Belief"

In this case, the defendants first take issue with Wilbur-Ellis's frequent reliance "upon information and belief" in making its factual allegations.  With some authority, the defendants argue Wilbur-Ellis's pleading on that basis is insufficient to survive a motion to dismiss. *See, e.g.*, *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (declining "to take as true [the plaintiff's] allegations 'upon information and belief'").  As the defendants see it, Wilbur-Ellis's more than fifty allegations "upon information and belief" are no different than mere conclusions and should not "unlock the doors of discovery."

Wilbur-Ellis truculently responds that the defendants' "gripe ignores the numerous specific and substantive allegations made against each Defendant based on his particular conduct, as summarized in second section [sic] of [its] brief."  Wilbur-Ellis cites *Stamm v. County of Cheyenne*, 326 F. Supp. 3d 832, 855-56 (D. Neb. 2018), for the proposition that allegations "upon information and belief" can still state a claim under *Twombly* and *Iqbal*'s plausibility standard, as long as the claim is based on factual allegations that make liability plausible and do not simply state a formulaic recitation of the elements.  In Wilbur-Ellis's view, it hits that mark.

Although it does not appear the Eighth Circuit has ever delved into this issue, several other circuit courts have concluded the plausibility standard under *Twombly* and *Iqbal* "does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *accord Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (listing circuit cases).  That does not, however, relieve the plaintiff of its duty to conduct a reasonable pre-suit investigation or excuse its failure to "exercise due diligence in pleading factual information" in support of its claims.  *Innova*, 892 F.3d at 730; *see also Rowles v. Curators of Univ. of Missouri*, 983 F.3d 345, 353 (8th Cir. 2020).

The Court is mindful of these principles in evaluating the sufficiency of Wilbur-Ellis's claims and will require sufficient factual information to support reasonable inferences of wrongdoing.  *See Innova*, 892 F.3d at 730.  But the Court is not persuaded that Wilbur-Ellis's admittedly rote allegations "upon information and belief" categorically fail to comply with Rule 8 and require dismissal of this case as a whole.

### 3.    Breach of the Duty of Loyalty

The defendants assert that Wilbur-Ellis's claims that they breached their duties of loyalty fail because "[a]ny duty of loyalty" they owed ended when Wilbur-Ellis "instructed [them] not to act on its behalf and terminated their ability to do so."  Setting that date as August 17, 2017, at the latest, the defendants contend they could not breach a duty that no longer existed.  The argument, which is based on agency principles, is ineffective.

The defendants provide no support for the proposition that the duty of loyalty is so closely tied to—let alone coterminous with—any authority an employee might have to act on their employer's behalf as its agent in circumstances like these.  They also ignore Wilbur-Ellis's actual allegations of disloyalty.  Not only does Wilbur-Ellis allege acts of disloyalty that occurred before the defendants gave notice of their intent to resign, but it also alleges that the defendants remained employees through August 27, 2021.  They received their normal pay and benefits through that date yet failed to follow Wilbur-Ellis's instructions regarding communications with its customers and the return of company property and equipment within that time frame.  As the defendants acknowledge, "[u]nder Nebraska law, an employee has a duty of loyalty to their employer" *throughout their employment*. *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1032 (8th Cir. 2020).

Wilbur-Ellis's disloyalty claims may or may not withstand closer scrutiny after discovery, but they do not fail as a matter of law based on agency principles as the defendants contend.

### 4.    Misappropriation

Wilbur-Ellis asserts misappropriation claims under both the DTSA and the NTSA. The parties agree that, as relevant here, the essential elements of those claims are substantially the same. *See id.* at 1033 (noting the similarity in the DTSA's and NTSA's respective definitions of "trade secrets" and analyzing the claims together).  For both, Wilbur-Ellis "must show, among other things, the existence of a protectable trade secret and misappropriation of that trade secret." *MPAY Inc. v. Erie Custom Comput.*

11

*Applications, Inc.*, 970 F.3d 1010, 1016 (8th Cir. 2020); *accord Richdale Dev. Co. v. McNeil Co.*, 508 N.W.2d 853, 859 (Neb. 1993), *opinion modified on denial of reh'g*, 510 N.W.2d 312 (Neb. 1994)).

The defendants contend Wilbur-Ellis's allegations of misappropriation and misuse are nothing more than labels and conclusions and that the amended complaint improperly alleges they will misappropriate in the future.[2] They assert such allegations are insufficient to plausibly state a claim. The defendants further assert that even if those allegations are sufficient, Wilbur-Ellis fails to allege they misappropriated even one "trade secret, much less trade secrets" as narrowly defined under the DTSA and NTSA.

Wilbur-Ellis counters that the defendants ask too much at this stage. Quoting this Court's decision in *West Point Auto & Truck Center, Inc. v. Klitz*, 492 F. Supp. 3d 936, 945 (D. Neb. 2020), Wilbur-Ellis notes "[a]ll that is required for a trade-secret claims to survive a motion to dismiss 'is an allegation that [the defendants] misappropriated [the plaintiff's] trade secrets sufficient to put the defense on notice as to the nature of the claim.'" (Alterations in original). It maintains it has done that here.

After careful review, the Court finds Wilbur-Ellis's allegations are hardly a model of effective pleading. The defendants raise some legitimate concerns about Wilbur-Ellis's heavy reliance on conclusory allegations with little or no factual support. But when the Court accepts Wilbur-Ellis's well-pleaded facts as true and draws all reasonable inferences in its favor, the Court concludes Wilbur-Ellis has sufficiently alleged its DTSA and NTSA claims to survive a motion to dismiss.

---

[2]The so-called "inevitable disclosure" doctrine does not appear to have been adopted by the Nebraska Supreme Court.

### 5.    Tortious Interference

The Court reaches the same conclusion with respect to Wilbur-Ellis's claims of tortious interference with a business relationship or expectancy.  To establish a tortious-interference claim under Nebraska law, Wilbur-Ellis

> must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Thompson v. Johnson*, 910 N.W.2d 800, 806-07 (Neb. 2018).  To be actionable, the interference "must be both intentional and unjustified.  An intentional, but *justified*, act of interference will not subject the interferer to liability."  *Recio v. Evers*, 771 N.W.2d 121, 132 (Neb. 2009) (footnotes omitted).  "[V]alid competition[] cannot be the basis for a tortious interference claim."  *The Lamar Co., LLC v. City of Fremont*, 771 N.W.2d 894, 906 (Neb. 2009).  An action for tortious interference also "will not lie where the substance of the alleged interference is the provision of truthful information," *Recio*, 771 N.W.2d at 133, or where there is no "breach or termination of the relationship," *id.* at 131.

Here, the amended complaint is comparatively long on labels and conclusions and short on factual allegations that support a reasonable inference that each of the defendants tortiously interfered with Wilbur-Ellis's business relationships or expectancies.  Wilbur-Ellis's allegations of unjustified acts of interference and actionable harm are particularly thin.  *See*, *e.g.*, *ACI Worldwide Corp. v. MasterCard Techs., LLC*, No. 8:14CV31, 2014 WL 7409750, at *8 (D. Neb. Dec. 31, 2014) (dismissing a tortious-interference claim where the plaintiff failed to allege it lost customers or to allege "facts showing harm caused by Defendants' interference with [its] relationships in some other way as a result of Defendants' alleged wrongdoing").  And many of its supporting allegations based "upon information and belief" are speculative and conclusory.  *See Iqbal*, 556 U.S. at 678

13

(explaining the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully").

Even so, Rule 8 does not set a high bar. Given the requisite plausibility standard, the Court finds Wilbur-Ellis has given the defendants adequate notice of the basis for its tortious-interference claims and has alleged just enough to "nudge" its "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Based on the foregoing,

IT IS ORDERED:

1.  Plaintiff Wilbur-Ellis Company LLC's Motion for Oral Argument (Filing No. 23) is denied.

2.  The defendants' Motion to Dismiss (Filing No. 21) is denied in part as explained above.

    a.  The defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

    b.  The Court will reserve ruling on defendant Chad Mueller's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) pending limited discovery and further briefing on that issue.

3.  The parties shall have until April 4, 2022, to complete limited discovery to determine whether Mueller has sufficient contacts with Nebraska to subject him to personal jurisdiction in this Court.

4.  Mueller must then file a supplemental brief on or before April 25, 2022.

5.  Wilbur-Ellis must file any response on or before May 16, 2022.

Dated this 4th day of February 2022.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

14