IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILBUR-ELLIS COMPANY LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSH GOMPERT, AARON PETERSEN, JAMES KUNZMAN, and CHAD MUELLER,<br><br>    Defendants. | **8:21CV340**<br><br>**MEMORANDUM AND ORDER** |

  The Plaintiff has sued several of its former employees for, among other claims, misappropriation of trade secrets and tortious interference with business relationships. Plaintiff now seeks to serve a third-party subpoena on Defendants' current employer and Plaintiff's direct competitor, J.R. Simplot Company ("Simplot"). Before the subpoena was issued, Defendants served Plaintiff with several objections, arguing that the subpoena is improper because it seeks information that is not relevant, is a fishing expedition for competitive information, and is a "harassing, intimidating, and retaliatory action" directed at Defendants' current employer. (Filing No. 56-2 at CM/ECF pp. 15-18).

  Before the Court is Plaintiff's Motion to Overrule Defendants' Objections and its corresponding Motion for Hearing. (Filing No. 54 and 62). Defendants have also filed a motion seeking to lift the restricted access filing designation on Plaintiff's "Identification of Trade Secrets." (Filing No. 71). For the reasons that follow, the Plaintiff's motions will be denied, and Defendants' motion to lift restrictions will be granted.

BACKGROUND

This case was filed on September 1, 2021, and case progression was set on May 5, 2022, after the amended complaint was filed and the motions to dismiss were resolved. (Filing No. 44). On May 27, 2022, a telephonic conference was held with the undersigned to address Defendants' objections to Plaintiff's proposed document production subpoena of Defendants' new employer, Simplot. (Filing No. 47, audio file). The parties were heard, and the undersigned directed Plaintiff to identify what Defendants allegedly took and shared with Simplot, and to conduct party discovery related to that information before serving third party discovery on Simplot. Id.

On September 16, 2022, Plaintiff filed a motion to overrule Defendants' objections to the proposed third-party subpoena. (Filing No. 54). In support of the motion, Plaintiff argues the subpoena requests information and documents that are "entirely relevant," and Defendants have failed to provide any substantive information in discovery. (See generally, Filing No. 55). Plaintiff argues that if Defendants "believed they could produce the requested information and documents sought by the Subpoena through less intrusive means, they should have done so pursuant to their discovery obligations." (Filing No. 55 at CM/ECF p. 12). Plaintiff states it is left with no choice but to proceed with discovery through the third-party subpoena to Simplot.

In response, Defendants argue that Plaintiff is litigating this case in bad faith and has not, to date, "provided a single fact or detail identifying the information and trade secrets on which Plaintiff's claims are supposedly based." (Filing No. 59 at CM/ECF p. 1). As such, Defendant contends the subpoenaed information is irrelevant, and that Plaintiff's actions in this case amount to harassment of Defendants and their current employer. (Filing No. 59 at CM/ECF p. 1).

On October 27, 2022, after reading the parties' briefs, the court ordered Plaintiff to "disclose, <u>with specificity</u>, the trade secrets it alleges were misappropriated and file the list of record." (Filing No. 66 (emphasis in original)). In response, Plaintiff filed its "Identification of Trade Secrets" on November 4, 2022. The court granted Plaintiff's request to file that document as a restricted access document. (Filing No. 69).

Plaintiff's proposed subpoena was filed as part of the present motion. ([Filing No. 56-2 at CM/ECF p. 4](#)). The subpoena requests ten categories of documents including, but not limited to, documents relating to Defendants' employment with Simplot, various communications between the Defendants and Simplot, various communications between Defendants and Plaintiff's contacts, and, rather broadly, any documents relating to Plaintiff in any way.

## ANALYSIS

Under Nebraska Civil Rule 45.1, a party may move for the issuance of a contested third-party subpoena. [NECivR. 45.1](#). The court will issue the subpoena if the topics are within the permissible scope of discovery as outlined in Rule 26 of the Federal Rules of Civil Procedure. The scope of permissible discovery is broad, and parties may obtain:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Although relevance is broadly construed for discovery purposes, the proponent of the discovery must make "[s]ome threshold showing of relevance ... before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." Prism Techs., LLC v. Adobe Sys., Inc., 284 F.R.D. 448, 449 (D. Neb. 2012) (quoting Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case. See Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972).

When the discovery sought appears relevant on its face, the party resisting discovery has the burden to establish that the discovery is not relevant, or is "of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure." Streck, Inc. v. Research & Diagnostic Sys., Inc., No. 8:06-cv-458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009) (quoting Moses v. Halstead, 236 F.R.D. at 671.) However, when the relevancy of the discovery request is not readily apparent, the court need not consider proportionality unless the moving party first shows how the requested information is relevant. Id.

The scope of discovery under a Rule 45 subpoena is the same as the scope of discovery under Rules 26(b) and 34 and is subject to the rules that apply to other methods of discovery. (McGehee v. Nebraska Dept. of Corr. Servs. No. 4:18-cv-3092, 2019 WL 266423 (D. Neb., Jan. 17, 2019). However, the standard for nonparty discovery may require a stronger showing of relevance than for party discovery. Cor Clearing, LLC v. Calissio Res. Grp. Inc., No. 8:15-cv-317, 2016 WL 2997643 (D. Neb. May 23, 2016).

1.   Standing

As a preliminary matter, Plaintiff argues that Defendants lack standing to object to subpoenas to be served on third parties. To the extent Defendants object to the subpoena as being unduly burdensome or inconvenient, the court agrees with Plaintiff, and overrules Defendants' objections on this basis. See Streck, Inc., 2009 WL 1562851 at *3. ("[Plaintiff] does not have standing to lodge objections to the issuance of nonparty subpoenas to 'protect' the non-party from undue burden, inconvenience, and the like.").

But an adverse party has standing to object to a third-party subpoena on grounds of relevance or to protect a personal right or privilege in the information requested. Streck, Inc., 2009 WL 1562851 at *3; Mawhiney v. Warren Distribution, Inc., No. 8:05-cv-466, 2007 WL 433349 at *1, (D.Neb., Feb. 7, 2007), aff'd, 283 Fed. Appx. 424, 2008 WL 2682583 (8th Cir., July 10, 2008). And courts have repeatedly found that an individual "possesses a personal right with respect to information contained in employment records, and thus has standing to challenge such a subpoena." Cruthis v. Vision's, No. 4:12-CV-00244-KGB, 2013 WL 6332679, at *1 (E.D. Ark. Dec. 5, 2013) (citing Barrington v. Mortage IT, Inc., 07–61304–CIV, 2007 WL 4370647 (S.D.Fla.2007) (collecting cases)).

The court finds that Defendants have standing to object to the subpoena on the basis of relevance and to assert a personal right or privilege.

2.   Relevance

Defendants assert that the subpoena is improper because Plaintiff has failed to show the broad scope of documents it seeks is relevant. (Filing No. 56-2 at CM/ECF pp. 15-18). Defendants argue that neither they, nor the court, can fairly analyze what is relevant because Plaintiff has not adequately identified its

allegedly misappropriated trade secrets as previously ordered by the court. (Filing No. 59 at CM/ECF p. 16). The court agrees.

To evaluate the relevance of discovery requests and objections, the court considers the nature of the underlying claims. Trade secret cases present unique and difficult challenges with respect to the timing and scope of discovery. See, generally, Kevin R. Casey, Identification of Trade Secrets during Discovery: Timing and Specificity, 24 AIPLA Q.J. 191, 195 (1996) (addressing "[w]hen ... a plaintiff ... who alleges misappropriation of trade secrets ... [must] specifically identify those trade secrets before obtaining discovery from the defendant."). When considering the scope of relevant discovery in cases involving alleged misappropriation, courts must consider competing policy considerations and apply a fact-dependent approach. Id.

Several jurisdictions require the party alleging misappropriation to first identify its trade secrets with "reasonable particularity." See AutoMed Technologies, Inc. v. Eller, 160 F.Supp. 2d 915, 925 (N.D. Ill. 2001); DeRubeis v. Witten Techs., Inc., 244 F.R.D. 676 (N.D. Ga. 2007). Several rationales motivate this approach, including:

> (1) If discovery on defendant's trade secrets were automatically permitted, lawsuits might regularly be filed as "fishing expeditions" to discover the trade secrets of a competitor; (2) until the trade secret plaintiff has identified the trade secrets at issue with some specificity, there is no way to know whether the information sought is relevant; (3) it is difficult for a defendant to mount a defense until it has some indication of the trade secrets allegedly misappropriated, and (4) requiring the plaintiff to state its claimed trade secrets prior to engaging in discovery ensures that it will not mold its cause of action around the discovery it receives.

Switch Commc'ns Grp. v. Ballard, No. 2:11-CV-00285-KJD-GFW, 2012 WL 2342929, at *4 (D. Nev. June 19, 2012) (summarizing DeRubeis, 244 F.R.D. at 680–81). See also Vesta Corp. v. Amdocs Mgmt. Ltd., 147 F. Supp. 3d 1147, 1153 (D. Or. 2015) (noting the "growing consensus" of courts around the country who have applied the "reasonable particularity" standard).

After weighing these considerations, the court ordered Plaintiff to identify and disclose, with specificity, the trade secrets it alleges were misappropriated by Defendants and file the list of record. (Filing No. 66). This disclosure was requested to assist the court in determining the scope of relevant discovery, and to prevent a "fishing expedition" on a third-party competitor. Per the Court's Order, Plaintiff filed its trade secrets under restriction on November 4, 2022. (Filing No. 68). Having now reviewed Plaintiff's submission, the court finds that Plaintiff has failed to identify with adequate specificity the trade secrets it alleges were misappropriated.

The "reasonable particularity" requirement is subject to differing judicial interpretations. In BioD, LLC v. Amnio Tech., LLC, No. 2:13-cv-1670, 2014 WL 3864658 (D.Ariz. Aug. 6, 2014), the court defined "reasonable particularity" as "a description of trade secrets at issue that is sufficient to (a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." Id. at *5. But other courts have adopted a far more precise definition, holding:

> [The party] must identify the specific characteristics of each trade secret, such as a particular drawing, process, procedure or cost/pricing data. It must also describe with reasonable particularity all of its trade secrets, including those involving "business methods, know-how, machines, manufacturing process and procedure, marketing information, pricing data, product designs and manufacturing information, ... [and] supplier and vendor lists" as alleged."

Knights Armament Co. v. Optical Sys. Tech., Inc., 254 F.R.D. 463, 467 (M.D.Fla.) aff'd, 254 F.R.D. 470 (M.D.Fla.2008) (citing Del Monte Fresh Produce Co. v. Dole Food Co. Inc., 148 F.Supp.2d 1322, 1324 (S.D.Fla.2001)). "It is insufficient to describe the trade secrets by generic category." Id.

While Plaintiff has provided a comprehensive list of categories of allegedly misappropriated trade secrets, the court finds Plaintiff's trade secrets are not described with reasonable particularity under either the standard set in BioD or Knights Armament. Instead, a review of Plaintiff's trade secret identification reveals seven generic categories, with corresponding generic definitions, which Plaintiff alleges are trade secrets. While Plaintiff argues that it has "produced nearly 6,000 pages of documents in this lawsuit, many of which represent the trade secrets and confidential information at issue in this matter," (Filing No. 68), this statistic emphasizes Plaintiff's lack of specificity in identifying the trade secrets at issue, rather than its commitment to robust discovery.

Plaintiff has not identified any specific characteristics of the allegedly misappropriated trade secrets. Rather, as reflected in Plaintiff's court-ordered disclosure, Plaintiff is apparently claiming that everything Defendants encountered in their positions at Wilbur-Ellis was a trade secret. While Plaintiff cites CFGenome, LLC v. Streck, Inc., No. 4:16-cv-3130, 2019 WL 3969178 (D. Neb. August 22, 2019), and Peter Kiewit Sons', Inc. v. Wall Street Equity Group, Inc., No. 8:10-cv-365, 2011 WL 5075720 (D. Neb. Oct. 25, 2011), as support for its arguments, these cases actually support Defendants' position. The plaintiff in Peter Kiewit specifically identified the misappropriation—Defendants' unauthorized use of the Kiewit name in business solicitation letters—at the outset of the case, and all discovery was focused on proving Defendants sent those letters. In CFGenome, this court ordered Streck to identify the trade secrets it alleged were misappropriated so that the scope of discovery was accordingly limited thereafter.

So, in both cases, this court had already determined that the information sought from the third parties was relevant and the trade secrets at issue were specifically identified before leave was granted to serve subpoenas.

Plaintiff alleges Defendants downloaded files from the Wilbur-Ellis issued laptops to external hard drives and USB devices before leaving their jobs at Wilbur-Ellis. (Filing No. 11, at CM/ECF pp. 53-54, 74-75 ¶¶ 15-16, 23-24). Plaintiff claims it cannot know what specifically was downloaded because Defendants "wiped or deleted all the information" from their Wilbur-Ellis-issued iPhones and iPads and at least some of the information from their Wilbur-Ellis-issued laptops before returning the devices to Wilbur-Ellis. (Filing No. 11, at CM/ECF pp. 14, 18, & 25 ¶¶ 48, 61, and 79).

The complaint alleges Wilbur-Ellis intended to conduct a full forensic audit of the electronic devices upon their return. (Filing No. 11, at CM/ECF p. 12, ¶ 40). Plaintiff has not explained the forensic examination that it conducted or attempted on these devices to obtain backup copies of their prior contents and identify what was downloaded. And if Plaintiff was able to review event logs reflecting downloads to USBs and an external hard drive, the computers were not wiped. Computer data, including "deleted" files, is often recoverable long after the files and folders have disappeared from the screen. See Discovery of Deleted E-mail and Other Deleted Electronic Records, 27 A.L.R.6th 565 (Originally published in 2007). Moreover, a forensic inspection may identify specific devices (such as USBs) used to transfer information, which may later be used to request data, with particularity, from Simplot.

Based on the record before the court, Plaintiff has not identified, with specificity, the documents allegedly misappropriated by Defendants. And it has not shown that all efforts to do so have been exhausted to no avail. The court will deny

Plaintiff's motion to serve the subpoenas on Defendants' employer, Simplot, and the associated motion for hearing.

### 3. Motion to Lift Restrictions

While the motions were pending, the court allowed Plaintiff's court-ordered "Identification of Trade Secrets," (Filing No. 68), to be filed under restricted access. Defendants move to lift the restricted access designation, arguing the filing contains "no actual trade secrets" but rather lists categories of information and generalizations that are detailed in the Amended Complaint or otherwise publicly available. Plaintiff opposes the motion, arguing Defendants must articulate a basis for unsealing Plaintiff's Identification of Trade Secrets which has been properly filed under seal[1] pursuant to Fed. R. Civ. P. 26(c) and the parties' Protective Order. (Filing No. 72, at CM/ECF p. 2).[2] Plaintiff contends "disclosure would serve no purpose other than to harm Plaintiff's competitive standing." (Filing No. 72 at CM/ECF p. 1).

The basis for unsealing the document is rooted in the common law. Under common law, judicial records and documents have been historically considered

---

[1] Plaintiff's Identification of Trade Secrets was filed as a restricted access document, not a sealed document. Parties often use the terms "restricted access" and "sealed" interchangeably, but in this district, restricted filings are available to case participants and the court, while sealed filings are available only to the court. Nonetheless, for the purposes of this motion, under either definition, Defendants are requesting that the document be unrestricted and accessible to the public.

[2] Citing Nebraska Civil Rule 7.1 (j), Plaintiff also argues the motion must be denied because Defendants failed to meet and confer with Plaintiff before it was filed. Rule 7.1(j) applies to discovery motions only. The pending motion to unseal/restrict a filed document is not a discovery motion.

open to inspection by the public.[3] In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 573 (8th Cir.1988); see also Nixon v. Warner Commc'ns, 435 U.S. 589, 597 (1978). Accordingly, there is a common-law presumption in favor of public access to judicial records. United States v. McDougal, 103 F.3d 651, 657 (8th Cir.1996); see also, IDT Corp. v. eBay, 709 F.3d 1220, 1222 (8th Cir.2013). This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings and keep a watchful eye on the workings of public agencies. IDT Corp., 709 F.3d at 1222; see also Nixon, 435 U.S. at 597–98. The common law right of access to judicial records is not absolute, and "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." Nixon, 435 U.S. at 598-99.

Records or parts of records are sometimes sealed for good reasons, including the protection of confidential business information and trade secrets. See Infogroup, Inc. v. DatabaseLLC, 95 F. Supp. 3d 1170, 1199 (D. Neb. 2015); NECivR 5.3(b). So, when determining whether access to a document should be restricted, the court "must consider the degree to which sealing a judicial record would interfere with the interests served by the common-law right of access and balance that interference against the interests served by maintaining confidentiality of the information sought to be sealed." Id. (citing IDT Corp., 709 F.3d at 1222).

Upon close examination, the court finds that Plaintiff's "Identification of Trade Secrets" provides general categories of information and descriptions of

---

[3] The Eighth Circuit has not decided whether there is a First Amendment right of public access to the court file in civil proceedings. In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig., 9 F.4th 768, 792 (8th Cir. 2021), cert. denied sub nom. 3M Co. v. Amador, 212 L. Ed. 2d 791, 142 S. Ct. 2731 (2022).

Defendants' job responsibilities. With the exception of three customer names, the filing does not contain material that implicates confidentiality to the extent necessary to overcome the strong presumption of public access to court documents. Those names have been redacted by the court and the redacted version of Plaintiff's "Identification of Trade Secrets" will be filed on the public record.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion to Overrule Defendants' objections to the Proposed Third-Party Subpoena and corresponding Motion for Hearing are denied. (Filing No. 54 and 62).

2. Defendants' Motion to Lift Restrictions is granted in part. Filing No. 68, Plaintiff's Identification of Trade Secrets, will remain a restricted access filing. A redacted version of that document is attached to this order as a public filing.

Dated this 16th day of December, 2022.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge